**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE: TIDEWATER LANDFILL, LLC ET AL**

**CIVIL ACTION**

**NO. 26-910**

**SECTION "B" (5)**

## ORDER AND REASONS

Before the Court is the Chapter 7 Trustees opposed Motion to Withdraw Reference in the related Chapter 7 Bankruptcy cases[1] to the United States Bankruptcy Court for the Eastern District of Louisiana. (See Rec. Docs. 1, 10, 15, 16, 18). Trustees aver that this case involves significant core and non-core claims, and no principle of judicial economy is served by routing a complex environmental and insurance coverage dispute through a tribunal that lacks the authority to finally resolve all of it.

For reasons that follow,

**IT IS ORDERED** that the Motion to Withdraw Reference (Rec. Doc. 1) is **DENIED**.

## I. FACTUAL BACKGROUND

The Louisiana Department of Environmental Quality ("LDEQ") initiated this action against several defendants based on alleged mismanagement of the Coast Guard Road Sanitary Landfill and disregard for applicable environmental statutes, regulations, permits, and administrative orders. On October 12, 2018, LDEQ filed a Petition for Mandatory Injunction to Abate a Continuing Nuisance (the "LDEQ Action") in Louisiana state court against Tidewater Landfill, LLC ("Tidewater"), Environmental Operators, LLC ("Environmental Operators"), Louisiana Fruit Company ("Louisiana Fruit"), USI Gulf Coast, Inc., Ironshore Specialty

[1] *In re Environmental Operators, LLC, Bkry*. No. 20-11648; *In re Tidewater Landfill, LLC*, Bkry. No. 20-11646.

Insurance Company ("Ironshore"), AIG Specialty Insurance Company ("AIG"), and The Gray Insurance Company ("Gray"). (Rec. Doc. 1 at 17.) Ironshore Specialty Insurance Company, AIG Specialty Insurance Company, and The Gray Insurance Company will collectively be referred to as ("Insurers").

The state-court lawsuit was brought against Tidewater, Environmental Operators, and Louisiana Fruit, among others, and is, in substance, an action by a governmental entity to enforce environmental statutes and regulations. *See The Louisiana Department of Environmental Quality v. Tidewater Landfill LLC et al.*, No. 2:23-Cv-06183, (E.D. La. May 29, 2024) (Doc. 5-1 at 6). The State Court Lawsuit has since been amended four times and seeks, among other relief, "a mandatory injunction against the Defendants mandating that they comply with La. R.S. 30:2155, the Louisiana Environmental Quality Act, the Louisiana Solid Waste Regulations, all applicable permits and administrative orders, for the proper closure of the Coast Guard Road Sanitary Landfill," as well as relief to abate a landfill nuisance within the meaning of La. C.C. art. 667. *Id.* at 7.

## II. PROCEDURAL HISTORY

On October 12, 2018, the Louisiana Department of Environmental Quality ("LDEQ") filed a Petition on Mandatory Injunction to Abate a Continuing Nuisance in Louisiana state court against Tidewater Landfill, LLC ("Tidewater"), Environmental Operators, LLC ("Environmental Operators"), Louisiana Fruit Company ("Louisiana Fruit"), and the Insurers. (Rec. Doc. 1 at 17.) LDEQ subsequently amended its petition in May 2019, August 2019, and October 2019, adding allegations and additional insurer defendants. (Id.) In May 2019, Louisiana Fruit asserted crossclaims against its co-defendants for indemnity and a reconventional demand against LDEQ for negligence and breach of duty. (Id. at 17–18.)

On September 22, 2020, Tidewater and Environmental Operators filed Chapter 7 bankruptcy petitions. (Id. at 18.) The filings stayed the LDEQ Action as to the Debtors. In October 2020, the Chapter 7 Trustees filed notices stating that the estates had no assets available for distribution. (Id.) In December 2020, LDEQ and Louisiana Fruit moved for relief from the automatic stay to permit the LDEQ Action to proceed against the Debtors and non-debtor Defendants, and the Bankruptcy Court granted those motions in January 2021. (Id.)

In January 2022, the Trustees notified creditors that the estates held assets in the form of insurance proceeds and instructed creditors to file proofs of claim. (Id. at 19.) LDEQ and Louisiana Fruit thereafter filed proofs of claim in both Bankruptcy Cases based on the same claims asserted in the LDEQ Action. (Id.) The Trustees filed objections to LDEQ's proofs of claim. (Id.)

On September 19, 2023, the Louisiana state court granted LDEQ leave to file a Fourth Amended Petition, adding state-law single-business-enterprise and alter-ego claims against Paul Guidry, Kevin Guidry, Industrial Management Group LLC, AGPG LLC, Waste Disposal Services of South Louisiana LLC, Gulf Coast Water & Beverage LLC, Industrial Services Group LLC, Personnel Providers LLC, Diesel Maintenance LLC, and Pintail Equipment Rental LLC (collectively, the "Guidry Defendants"). (Id.) The Guidry Defendants removed the LDEQ Action to this Court. (Id.) The Insurers thereafter filed a Joint Motion to Remand and a Joint Motion to Strike/Statement in Opposition to Notice of Automatic Stay. *See In re: Tidewater Landfill, LLC, et al.*, No. 23-6183 (Rec. Docs. 3, 10).

On April 30, 2024, this Court referred the LDEQ Action to the Bankruptcy Court for all purposes, including consideration of the pending Motion to Remand and Motion to Strike, after determining that the action was at least "related to" the Debtors' bankruptcy proceedings. (Rec.

Doc. 1 at 19.) On September 13, 2024, the Bankruptcy Court denied the Motion to Remand and Motion to Strike, determining that LDEQ's claims in the LDEQ Action were substantively the same as its bankruptcy proofs of claim and that the filing of those proofs of claim transformed the state-court action into a core proceeding. (Id. at 20.) The Insurers subsequently sought clarification concerning the characterization of their insurance claims. At the hearing, the Bankruptcy Court explained that its remand ruling had not addressed whether the insurance claims were core or non-core because that issue did not affect the remand determination. (Id.) The Bankruptcy Court granted the motion for clarification on November 25, 2024. (Id.)

On November 8, 2024, the Guidry Defendants moved to dismiss and for sanctions, arguing that LDEQ's claims against them belonged to the Debtors' estates and that LDEQ therefore lacked standing. (Rec. Doc. 1 at 20.) On December 11, 2024, LDEQ and the Trustees jointly moved for derivative standing for LDEQ to pursue the estate-based claims against the Guidry Defendants. (Id.) On December 18, 2024, Louisiana Fruit moved for summary judgment seeking enforcement of an alleged indemnity obligation against Tidewater and Environmental Operators; several Insurers, LDEQ, and the Trustees opposed the motion. (Id.) The Bankruptcy Court denied the motion as premature on March 13, 2025. (Id. at 21.) That ruling was appealed to this Court and affirmed. *See In re: Tidewater Landfill, LLC, et al.*, No. 23-6183 (Rec. Docs. 38, 39).

On March 14, 2025, LDEQ filed a Clarifying Complaint asserting environmental claims against Tidewater, Environmental Operators, and Louisiana Fruit; direct-action claims against the Insurers; and single-business-enterprise and alter-ego claims against the Guidry Defendants. (Rec. Doc. At 21.) Louisiana Fruit answered and reasserted its crossclaims and counterclaim on April 28, 2025. (Id.) On July 16, 2025, the Bankruptcy Court granted LDEQ derivative standing

to pursue the estate-based claims against the Guidry Defendants. (Id.) The Guidry Defendants answered the Clarifying Complaint and asserted crossclaims against AIG, Ironshore, and Aspen and counterclaims against the Trustees on August 27, 2025. (Id.) AIG and Aspen subsequently answered the Clarifying Complaint and the Guidry Defendants' crossclaims, and Landmark answered the Clarifying Complaint. (Id.) On November 21, 2025, the Trustees moved to dismiss the Guidry Defendants' counterclaims; Kevin and Paul Guidry opposed, the Trustees replied, and the Bankruptcy Court granted the motion on February 11, 2026. (Id. at 22.)

On April 29, 2026, Tidewater and Environmental Operators, through the Chapter 7 Trustees, filed the present Motion to Withdraw the Reference. (Rec. Doc. 1.) The Trustees contend that withdrawal is warranted because the action contains both core and non-core claims and that having the Bankruptcy Court adjudicate the non-core claims in the first instance would result in duplicative proceedings and de novo review in this Court. On May 19, 2026, the Insurers filed an opposition to the Motion. (Rec. Doc. 7.) AIG and Aspen subsequently sought leave to amend the opposition, which the Court granted on May 26, 2026, and the Amended Opposition was filed that same day. (Rec. Docs. 8, 14, 15.) The Trustees filed a reply to the Insurers' opposition on May 22, 2026. (Rec. Doc. 10.) On May 27, 2026, the Guidry Defendants filed a separate opposition to the Motion to Withdraw the Reference. (Rec. Doc. 16.) The Trustees filed a reply addressing the Guidry Defendants' opposition on June 8, 2026. (Rec. Doc. 18.) The Motion was originally set for submission on May 27, 2026. (Rec. Doc. 4.) The Court subsequently denied the Trustees' request for oral argument and continued the submission date to June 10, 2026. (Rec. Doc. 17.)

## III. ANALYSIS

### A. Legal Standard

The standard for when a district court may withdraw the reference from bankruptcy court is set forth in 28 U.S.C. § 157(d). That section provides for both mandatory and permissive withdrawal:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Mandatory withdrawal therefore applies when resolution of a proceeding requires consideration of both Title 11 and other federal laws regulating organizations or activities affecting interstate commerce. *Id.* Courts generally construe the mandatory-withdrawal provision narrowly, requiring a determination that the proceeding involves a substantial and material consideration of non-Bankruptcy Code federal law. *See In re Queyrouze*, No. 14-2715, 2015 WL 5440825, at *2 (E.D. La. Sept. 15, 2015) (quoting *In re OCA, Inc.*, No. 06-3811, 2006 WL 4029578, at *2 (E.D. La. Sept. 19, 2006)).

Permissive withdrawal is different. Section 157(d) permits withdrawal "for cause shown." Although "cause shown" is not defined by statute, the Fifth Circuit has indicated that the district court should consider the following factors, known as the *Holland* factors, in determining whether to order withdrawal of the reference: (1) whether the matter at issue is a core or a non-core proceeding, (2) whether the proceedings involve a jury demand, and (3) whether withdrawal

would further the goals of (a) promoting uniformity in bankruptcy administration, (b) reducing forum shopping and confusion, (c) fostering the economical use of the debtor's and creditors' resources, and (d) expediting the bankruptcy process. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir. 1985). The goals identified in the third Holland factor are collectively known as "considerations of judicial economy." *Id.*

**B. The Non-Core Claims Do Not Require Mandatory Withdrawal**

The Trustees are correct that, with respect to certain claims against the Insurers, the Bankruptcy Court may lack constitutional authority to enter a final judgment. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 35–36 (2014). That conclusion, however, does not mean that withdrawal of the reference is mandatory.

The Supreme Court has distinguished between a bankruptcy court's authority to hear a proceeding and its authority to enter a final judgment. "The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. 462, 473 (2011). Bankruptcy judges may enter final judgments in core proceedings arising under Title 11 or arising in a case under Title 11, subject to the constitutional limitations recognized by *Stern*. *See* 28 U.S.C. § 157(b)(1). A proceeding is core if it invokes a substantive right provided by Title 11 or is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002) (quoting *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

Here, the Bankruptcy Court has determined that certain claims against the Insurers are non-core. That determination does not, however, deprive the Bankruptcy Court of authority to hear those claims. *See Exec. Benefits Ins. Agency*, 573 U.S. 25 at 36. Where a bankruptcy judge determines that a proceeding is non-core but otherwise related to a bankruptcy case, § 157(c)(1)

authorizes the bankruptcy judge to "submit proposed findings of fact and conclusions of law to the district court." *Id.* The district court then reviews de novo those matters to which a party timely and specifically objects. 28 U.S.C. § 157(c)(1).

The Supreme Court confirmed this procedure in *Executive Benefits Insurance Agency v. Arkison*, explaining that when a bankruptcy court lacks constitutional authority to finally adjudicate a claim, the bankruptcy court may hear the claim and submit proposed findings and conclusions to the district court for de novo review. 573 U.S. 25, 28, 36–38 (2014). Thus, the fact that the Bankruptcy Court may not enter a final judgment on the Insurer claims does not, standing alone, establish cause for withdrawal. *Id.*

The claims also remain within the Bankruptcy Court's jurisdiction because they are at least "related to" the Bankruptcy Cases. The Fifth Circuit has explained that a proceeding is "related to" a bankruptcy case when its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Galaz*, 765 F.3d 426, 430 (5th Cir. 2014) (internal quotation marks and citations omitted). More specifically, a proceeding is related to bankruptcy when its outcome could alter the debtor's rights, liabilities, options, or freedom of action and thereby affect the handling or administration of the bankruptcy estate. *Id.*

This Court has already determined that the action was at least related to the Bankruptcy Cases and referred the matter to the Bankruptcy Court. *See In re: Tidewater Landfill, LLC, et al.*, No. 23-6183 (Rec. Doc. 32). Although the Bankruptcy Court subsequently determined that certain claims against the Insurers are non-core, those claims remain within the Bankruptcy Court's statutory authority under § 157(c)(1), subject to proposed findings and de novo review by this Court. Accordingly, the non-core nature of those claims does not require mandatory withdrawal.

**C. The Permissive Factors Do Not Weigh in Favor of Withdrawal**

Permissive withdrawal is likewise unwarranted. Although the non-core nature of the Insurer claims provides some support for withdrawal under the first factor, the remaining *Holland* factors weigh against withdrawal. Taken together, those factors do not establish the "cause" necessary for permissive withdrawal under § 157(d).

**1. Core or Non-Core Nature of the Proceeding**

The first factor weighs partially in favor of withdrawal, but it is not dispositive. The proceeding concerning the LDEQ Action is a core proceeding, while the claims against the Insurers have been determined to be non-core. The non-core nature of the Insurer claims provides some support for withdrawal because the Bankruptcy Court may not enter a final judgment on those claims and instead must proceed under § 157(c)(1).

But the proceeding is not exclusively non-core. The LDEQ Action is core and bears directly on the administration of the bankruptcy estates. Moreover, the non-core claims remain within the Bankruptcy Court's jurisdiction as related-to proceedings and may be heard by the Bankruptcy Court subject to proposed findings and de novo review by this Court. *See* 28 U.S.C. § 157(c)(1); *Arkison*, 573 U.S. at 36–38.

Accordingly, while the first factor provides some support for withdrawal, it does not independently establish cause for withdrawing the reference.

**2. Jury Trial Demand**

The second factor does not support withdrawal at this time. Although a jury trial has been demanded, that demand does not presently require withdrawal of the reference. The parties are not yet prepared to proceed to trial, and the Bankruptcy Court's inability to conduct the jury trial does not presently impede the parties' right to have the matter tried to a jury. Multiple courts,

including other sections of court in this District, have found that a motion to withdraw is premature until such time as it is determined that a jury trial must be conducted. *See In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 874 (E.D. La. 2011) (citing *Holland Am. Ins. Co.*, 777 F.2d at 998); *See also Babin v. Crescent Drilling & Prod., Inc.*, No. CV 25-2048, 2026 WL 1091243, at *2 (E.D. La. Apr. 22, 2026). Indeed, "[u]ntil that time, it may better serve judicial economy...for the bankruptcy court to resolve pre-trial matters." *In re OCA, Inc.*, No. 06-3811, 2006 WL 4029578, at *5 (E.D. La. Sept. 19, 2006).

"Under the circumstances, the Court need not decide whether a jury trial is proper, but may deny the motion to withdraw the reference until such time as it becomes clear that a jury trial, if available, is necessary." *Id.* Here, the Trustees have repeatedly sought extensions of the pretrial deadlines, including extensions requested on a day-to-day basis, and the case therefore remains in the pretrial stage.

**3. Considerations of Judicial Economy**

**a. Uniformity in Bankruptcy Administration**

The first consideration of judicial economy weighs against withdrawal. In *In Re OCA, Inc.* the court stated that "[i]n order to promote uniformity and prevent forum-shopping, it is logical that the Bankruptcy Court would conduct pretrial proceedings. . . . This would prevent needless expenditure of resources on parallel proceedings." *Id.* at *5.

Here, the issues presented in the LDEQ Action may directly affect the administration and distribution of the bankruptcy estates. The Bankruptcy Court is therefore in the best position to consider those issues in conjunction with the broader Bankruptcy Cases and to account for their effect on the estates.

Withdrawal would instead divide related matters between two courts: the Bankruptcy Court would continue to administer the Bankruptcy Cases, while this Court would adjudicate claims arising from the same underlying dispute. That division creates a greater potential for inconsistent rulings and fragmented administration. Keeping the proceeding before the Bankruptcy Court permits the issues affecting the estates to be considered within the context of the Bankruptcy Cases and promotes uniformity in bankruptcy administration.

**b. Reduction of Forum Shopping and Confusion**

The next consideration of judicial economy weighs strongly against withdrawal. In *In Re: Babcock & Wilcox Co.*, the Court found that the lack of forum shopping was evident by the parties taking consistent positions throughout the litigation. *See In re: Babcock & Wilcox Co.,* No. 00-10993, 2001 WL 1018366, at *5 (E.D. La. July 2, 2001).

Here, the procedural history demonstrates that the Trustees have taken materially inconsistent positions regarding the appropriate forum for resolving these claims. Previously, the Trustees advocated for keeping the claims together and emphasized their relationship to the Bankruptcy Cases. The Trustees expressly represented that "the Bankruptcy Court considers the LDEQ claims very much connected to the Bankruptcy Cases." *See In re: Tidewater Landfill, LLC, et al.*, No. 23-6183 (Rec. Doc. 13 at 6).

Based on the parties' arguments concerning the relationship between the claims and the Bankruptcy Cases, this Court referred consideration of the Motion to Remand to the Bankruptcy Court. *See In re: Tidewater Landfill, LLC, et al.*, No. 23-6183 (Rec. Doc. 31). The Bankruptcy Court ultimately denied the Motion to Remand.

The Trustees now take a different position in seeking withdrawal of the reference, asserting that "[t]he core claims in this case do not predominate over the non-core claims." (Rec.

Doc. 1 at 13.) The Court need not characterize the Trustees' prior position as legally binding to recognize the resulting procedural problem. The Trustees previously relied upon the close relationship between the claims and the Bankruptcy Cases to support proceeding in the bankruptcy forum; they now rely upon the distinction between the core and non-core claims to support moving the proceeding out of that forum. Permitting the proceeding to move between forums based upon shifting characterizations of the same claims would not reduce forum shopping or confusion.

Maintaining the reference, by contrast, provides a single forum in which the related claims can proceed and allows the Bankruptcy Court to continue managing matters that directly affect the Bankruptcy Cases. The second judicial economy consideration therefore weighs strongly against withdrawal.

**c. Economical Use of the Debtors' and Creditors' Resources**

The next judicial economy consideration weighs against withdrawal. The Bankruptcy Court has already devoted substantial time and judicial resources to this proceeding. It has become familiar with the claims and defenses, addressed the parties' prior procedural disputes, and established deadlines for discovery and dispositive motions.

Withdrawal at this stage would require this Court to assume responsibility for a proceeding already underway in the Bankruptcy Court. That transfer creates the potential for duplicative briefing, additional discovery disputes, renewed scheduling proceedings, and other expenditures of the parties' and estates' resources. Keeping the proceeding before the Bankruptcy Court, on the other hand, allows the parties and the Court to build upon the work already completed rather than requiring a second court to become familiar with the matter. *See In re OCA, Inc.*, No. 06-3811, 2006 WL 4029578, at *5. Maintaining the reference therefore

promotes judicial economy and conserves the resources of the debtors, creditors, and the parties. *Id.* The third judicial economy consideration weighs against withdrawal.

**d. Expedition of the Bankruptcy Process**

The final consideration of judicial economy also weighs against withdrawal. As stated in *In Re Gulf States Long Term Acute Care*, until trial is necessary, it better serves judicial economy for the bankruptcy court to handle pre-trial matters. *See In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. at 874. There is no indication that withdrawing the reference would expedite resolution of the proceeding. To the contrary, the Bankruptcy Court has already taken substantial steps toward resolution by establishing deadlines for discovery, dispositive motions, and otherwise moving the matter forward despite the cancellation of the trial date due to Trustees failure to meet pretrial deadlines in Bankruptcy Court.

Nor is the case at the point immediately preceding trial. Indeed, the Trustees themselves have sought extensions of pretrial deadlines. Under these circumstances, transferring the proceeding to this Court would not necessarily accelerate its resolution and could instead require additional scheduling and briefing before the matter could proceed.

Maintaining the reference permits the proceeding to continue under the schedule already established or to be established by the Bankruptcy Court and avoids the potential delay associated with transferring the matter to a new forum. The fourth judicial economy consideration therefore weighs against withdrawal.

## IV. CONCLUSION

Although the non-core nature of the Insurer claims provides some support for withdrawal under the first *Holland* factor, the remaining factors weigh against withdrawal. The Bankruptcy Court's inability to enter a final judgment on the non-core claims does not alter this analysis.

Section 157(c)(1) provides a mechanism for the Bankruptcy Court to hear related non-core claims and submit proposed findings of fact and conclusions of law to this Court for de novo review. *See Executive Benefits*, 573 U.S. at 36–38.

For the reasons set forth above, the Court finds that withdrawal is not mandatory, nor is the Court persuaded that it should permissively withdraw the reference. Accordingly, the motion to withdraw reference is denied.

New Orleans, Louisiana, this 9th day of September 2026

Senior United States District Judge